IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEENA PHINISEE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, et al. | : | No. 20-5279 |
|     Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                          **December 27, 2021**

      It has now been more than nine years since Plaintiff Rasheena Phinisee agreed to a $1.2 million settlement agreement with the United States, resolving claims related to her minor daughter A.P.'s development of liver disorder as a result of her ingestion of medication through Ms. Phinisee's breast milk. During the intervening period, three different district judges and five different appellate panels have heard cases related to the very allegations underlying this matter.

      It thus goes without saying that it is long past time for Ms. Phinisee to move forward. The Court is deeply sympathetic to A.P.'s health issues, and it recognizes Ms. Phinisee's unremitting desire to help her daughter. But, at this point, Ms. Phinisee's attempts to relitigate events that took place more than a decade ago and have been tested time and time again throughout the district and appellate courts are not helping anyone—especially not A.P.

      Before the Court are several motions to dismiss. Drexel University ("Drexel"), the Children's Hospital of Philadelphia ("CHOP"), the Hospital of the University of Pennsylvania ("HUP"), the United States, and all individual defendants have moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). The United States and Ms. Phinisee have also both moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons that follow, all of these

1

motions are granted and the Third Amended Complaint is dismissed with prejudice as time barred. Ms. Phinisee's motion to consolidate this action with the action presently before Magistrate Judge Lloret is denied. Additionally, because the Court now lacks subject matter jurisdiction over this action, it is remanded to the Philadelphia Court of Common Pleas for any further proceedings.

## I.     FACTUAL BACKGROUND

Ms. Phinisee's latest suit brings with it a long, complex, and torturous history. The Third Circuit summarized the history of this dispute as follows:

> Ms. Phinisee and A.P., through counsel, Derek Layser and Gilbert Spencer, filed a medical malpractice suit in 2010[1] under the Federal Tort Claims Act in the United States District Court for the Eastern District of Pennsylvania. They alleged that A.P. developed biliary atresia, a disorder that causes liver failure, as a result of her ingestion through breast milk of Macrobid, a medication prescribed for Ms. Phinisee at a federally-funded health care clinic. With the parties' consent, the case was referred to a United States Magistrate Judge. The Government moved for summary judgment on the ground that Ms. Phinisee and A.P. could not establish the causal element of their negligence claim. While the Government's motion was pending, the parties attended a settlement conference where the Government offered to settle the case for $1.2 million. With Ms. Phinisee's authorization, her counsel accepted the offer. The day after the conference, Ms. Phinisee informed her counsel that she had decided to withdraw her acceptance because she had discovered that the settlement proceeds, which were to be placed in a special needs trust for the benefit of A.P., were subject to a lien held by the Pennsylvania Department of Public Welfare ("DPW") for past medical expenses paid through Medicaid. The amount of the lien was $703,491.25. Ms. Phinisee then discharged her counsel and retained new counsel.
>
> In May, 2012, the Government moved to enforce the settlement agreement. At a hearing on this motion, Ms. Phinisee testified that she had not been informed of the DPW Medicaid lien and, upon learning of its existence, no longer believed that the Government's offer adequately protected A.P. She additionally argued that the settlement conference could not have resulted in a binding agreement because the Government's offer was contingent upon its ability to obtain approval from the Assistant U.S. Attorney General, and because her former counsel had misled her into dropping claims brought in her own name. Former counsel testified that the Medicaid lien was discussed with Ms. Phinisee on the day of the conference; that she was happy with the $1.2 million offer; and that she authorized them to accept it.

---

[1] This opinion will refer to Ms. Phinisee's 2010 lawsuit as the "2010 Action."

2

The Magistrate Judge granted the Government's motion to enforce the settlement on August 6, 2012. Former counsel then filed a petition for minor's compromise, and the Magistrate Judge approved it on September 4, 2012. Ms. Phinisee and A.P. then moved unsuccessfully for reconsideration of both rulings. On appeal to this Court, they contended that the Magistrate Judge erred in granting the Government's motion to enforce the settlement; in denying reconsideration of the enforcement ruling; and in approving the petition for minor's compromise. We affirmed in a non-precedential opinion, holding that the settlement was enforceable; that due process was not violated by former counsel's filing of the petition for minor's compromise; and that the petition for minor's compromise was not substantively inadequate, see *A.P. ex rel. Phinisee v. United States*, 556 F. App'x 132 (3d Cir. 2014).

The Department of Health and Human Services paid the $1.2 million settlement on September 10, 2014. The amount owed specifically to Ms. Phinisee and A.P. after attorneys' fees—$859,587.73—was placed in an escrow account of the Law Firm of Layser & Freiwald, pending the creation of a special needs trust and the resolution of the DPW Medicaid lien. The funds remain in the escrow account undistributed to this day. In the meantime, Ms. Phinisee again sought new counsel and sued her former attorneys for negligence, alleging that they induced her to settle for significantly less than the value of her claim.[2] The District Court granted former counsel's motion to dismiss this negligence action, and we affirmed on appeal in a non-precedential opinion, see *Phinisee v. Layser*, 627 F. App'x. 118 (3d Cir. 2015).

In August, 2017, nearly three years after the settlement was paid, Ms. Phinisee filed a pro se Rule 60(b)(6) motion and amended motion, alleging fraud on the court in connection with the settlement, which she again argued was inadequate. The Magistrate Judge summarily denied the Rule 60(b)(6) motion and the case was reassigned to a new Magistrate Judge. In September, 2017, Aaron J. Freiwald, Esquire, of Freiwald Law (formerly, Layser & Freiwald, P.C.), petitioned the Magistrate Judge for the appointment of a guardian ad litem for A.P., on the ground that the settlement proceeds had yet to be distributed and were not being used for their intended purpose. Ms. Phinisee renewed her request for Rule 60(b)(6) relief.

At the direction of the Magistrate Judge, the U.S. Attorney submitted a response to the Rule 60 motion and to attorney Freiwald's petition for the appointment of a guardian ad litem for A.P. The U.S. Attorney responded that, in September, 2016, Ms. Phinisee retained attorney Kevin Buttery to complete the necessary legal requirements for the settlement funds to be made available to A.P. It appeared to the U.S. Attorney that Buttery made substantial progress toward that goal; however, the attorney-client relationship broke down, and he terminated his representation by way of an August 16, 2017 letter. The U.S. Attorney was unaware of any further efforts by Ms. Phinisee to obtain new counsel.

---

[2] This opinion will refer to this settlement as the "2012 Settlement."

3

> []
>
> In an order entered on January 10, 2018, the Magistrate Judge denied Ms. Phinisee's Rule 60(b)(6) motion to reopen the settlement on the merits and as untimely filed, and granted the petition for appointment of a guardian ad litem. With respect to appointment of a guardian ad litem, the Magistrate Judge noted the need to bring this litigation to an end for the sake of A.P.

*A.P. by & through Phinisee v. United States*, 736 F. App'x 309, 310-11 (3d Cir. 2018) (footnote omitted).

The Third Circuit summarily affirmed the Magistrate Judge's denial of Ms. Phinisee's Rule 60(b)(6) motion on the grounds that it was untimely filed and did not state a basis for relief. *Id.* at 312. The Third Circuit also noted that "appointment of a guardian ad litem was necessary here for A.P.'s sake and to bring this case to a close. . . . Instead of retaining new counsel to create a special needs trust, Ms. Phinisee pursued a frivolous Rule 60(b) motion to reopen matters previously decided, indicating a pointless refusal to carry out the terms of the settlement agreement. Such conduct is not in the best interests of A.P. or the interests of justice." *Id.* at 312-13. The Third Circuit also dismissed the appeal to the extent it raised A.P.'s interests because "a non-attorney parent must be represented by counsel to the extent that the parent brings an action to pursue claims on behalf of her child," and no attorney had entered an appearance on behalf of A.P. *Id.* at 312.

Later in 2018, Ms. Phinisee filed suit on behalf of herself and A.P. against the attorneys who have represented her in actions relating to A.P.'s medical care: Friewald and Buttery; Spencer and Layser, who were also the targets of Phinisee's 2014 legal malpractice suit; and Dennis Friedman, who represented Ms. Phinisee beginning in 2012. *Phinisee v. Friewald*, 334 F. Supp. 3d 650, 656 (E.D. Pa. 2018). Phinisee asserted several due process and legal malpractice claims, all of which were dismissed. *Id.* at 659.

4

On February 19, 2020, Phinisee initiated the instant action by filing a complaint in the Court of Common Pleas of Philadelphia County. She filed an Amended Complaint on July 3, 2020. (ECF No. 13, Ex. A.) Individual defendants Randolph Matthews, Binita Kamath, and Avani Shah filed Preliminary Objections to the Amended Complaint on July 23, 2020. Drexel also did so on August 7, 2020. On September 3, 2020, the Court of Common Pleas entered Orders sustaining both sets of Preliminary Objections and striking and dismissing all counts of the Amended Complaint against Mr. Matthews, Ms. Kamath, Ms. Shah, and Drexel with prejudice.[3] (ECF No. 13, Ex. B; ECF No. 18, Ex. C.)

Ms. Phinisee filed a Second Amended Complaint on September 29, 2020 and a Third Amended Complaint on October 20, 2020. (ECF No. 1, Ex. A; ECF No. 1-5 [hereinafter Third Am. Compl.].) The Third Amended Complaint names as defendants Drexel and Family Health Services of Drexel University ("Family Health Services")[4]; HUP and individuals Patricia Haygood, Christine Jaslar, Ruth Weisgerber, Hannah Cramer, Laura Oppenheim, Kai Pittman, Gwendolyn Nissel-Marshall, Susan Engles, and Susan Lipson[5] (collectively, the "HUP Defendants"); CHOP and individuals Mr. Matthews, Ms. Kamath, Ms. Shah, and Alan Flake (collectively, the "CHOP Defendants"); and the Family Practice and Counseling Network—The

---

[3] The Amended Complaint contains the same substance, claims, and counts as the Third Amended Complaint, except Count III in the Amended Complaint is stylized as "Drug Facilitated Assault & Battery *Failure to Warn." It has been split into two separate counts in the Third Amended Complaint—"Medical Assault and Battery" (Count III) and "Failure to Warn" (Count IV).

[4] After thorough research and discussions with Drexel's counsel regarding the nature of the Family Health Services entity, the Court will consider all claims against this entity as encompassed by claims filed against Drexel.

[5] Ms. Lipson was erroneously not named as a defendant at the time of removal, but she was employed by HUP during the relevant period. (*See* ECF No. 30.)

Health Annex (the "Health Annex") and individual Kati Graham-Parker. The Third Amended Complaint contains twelve counts: fraudulent concealment (Count I), lack of consent (Count II), medical assault and battery (Count III); failure to warn (Count IV)[6]; intentional infliction of emotional distress (Count V); negligent infliction of emotional distress (Count VI); invasion of privacy (Count VII); and vicarious liability for the actions of the individual defendants on the parts of the Health Annex (Count VIII), Family Health Services (Count IX); Drexel (Count X), CHOP (Count XI); and HUP (Count XII). Ms. Phinisee filed this suit in her own right, and did not bring any claims on behalf of A.P.

On October 22, 2020, the Health Annex and Ms. Graham-Parker timely and properly removed the action to this Court, which has jurisdiction over suits "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." 42 U.S.C. §§ 233(a), (c). The Health Annex and

---

[6] Count IV asserts a violation of Pennsylvania's Medical Care Availability and Reduction of Error ("MCARE") Act. The allegations Ms. Phinisee asserts in connection with Count IV appear to argue that defendants "failed to warn" both: (1) Ms. Phinisee about the risks associated with her medical treatment, and (2) the appropriate government agencies about the side effects of prescribing Oxycodene and Macrobid to "millions of lactating mothers . . . while nursing neonates under 30 days old." (Third Am. Compl. ¶¶ 76-81.) But "[c]laims of failure to warn patients or other third parties and claims of failure to report [improper medical] conduct to government authorities are [] not covered by the MCARE Act because they do not arise directly from the furnishing of medical services." *Aria Health v. Med. Care Availability & Reduction of Error Fund*, 88 A.3d 336, 344 (Pa. Commw. Ct. 2014) (citing *Connolly v. Com., Med. Pro. Liab. Catastrophe Loss Fund*, 739 A.2d 104, 106 (Pa. 1999)). The MCARE Act, however, does impose a duty on physicians "to a patient to obtain the informed consent of the patient or the patient's authorized representative" prior to performing certain medical procedures by describing the "risks and alternatives that a reasonably prudent patient would require to make an informed decision as to that procedure." 40 PA. STAT. AND CONS. STAT. ANN. § 1303.504(a)-(b) (West). The Court will thus construe Count IV as a claim for lack of informed consent, consistent with the Third Amended Complaint's allegations accusing defendants of failing to disclose to Ms. Phinisee the risks associated with her medical treatment.

Ms. Graham-Parker are federal employees of the United States Public Health Service for purposes of the claims asserted against them in this matter. *See id.* § 233(g). On November 2, 2020, the United States was substituted for the Health Annex and Ms. Graham-Parker. (ECF No. 4.) Also on November 2, 2020, Ms. Phinisee moved to dismiss the United States pursuant to Fed. R. Civ. P. 12(b)(1). (ECF Nos. 5, 7.)

On December 2, 2020, Drexel filed a response to Ms. Phinisee's motion and requested that the Court dismiss all claims against the United States with prejudice. (ECF No. 13.) Drexel also filed a cross-motion to dismiss all claims against itself pursuant to Fed. R. Civ. P. 12(b)(6). (*Id.*)

On December 8, 2020, the HUP Defendants moved to dismiss all claims against them pursuant to Fed. R. Civ. P 12(b)(6). (ECF No. 17.) The CHOP Defendants followed with their own 12(b)(6) motion on December 10, 2020. (ECF No. 18.) Ms. Phinisee responded to Drexel, the HUP Defendants, and the CHOP Defendants' motions on December 21, 2020. (ECF No. 21.) She also moved to consolidate this action with the 2010 Action pursuant to Fed. R. Civ. P. 42(a). (*Id.*)

On January 25, 2021, Ms. Phinisee filed a petition for a writ of mandamus with the Third Circuit. (ECF No. 22; Notice of Application for Writ of Mandamus, *A.P., et al v. United States of America*, No. 10-1253-RAL (E.D. Pa. Jan. 25, 2021), ECF No. 190.) Ms. Phinisee's petition requested that the Third Circuit direct the District Court to: vacate its orders enforcing the 2012 Settlement and appointing a guardian ad litem in the 2010 Action; enter a default judgment against the United States and rule on Ms. Phinisee's pending motion to dismiss in this action; and consolidate both cases and assign them to a new district court judge. *See In re Phinisee*, 848 F. App'x 90, 91 (3d Cir. 2021). The Third Circuit denied Phinisee's mandamus petition on March 3, 2021. *Id.* at 91-92.

7

On January 26, 2021, Magistrate Judge Lloret ordered the establishment of a Special Needs Trust for A.P.'s settlement proceeds in the 2010 Action. (Order Approving Special Needs Trust, *A.P*, No. 10-1253-RAL (E.D. Pa. Jan. 26, 2021), ECF No. 191.) Ms. Phinisee appealed on March 27, 2021, and the Third Circuit summarily affirmed Magistrate Judge Lloret's order on November 23, 2021. *A.P. by & through Phinisee v. United States*, Civ. A. No. 21-1614, 2021 WL 5492805, at *1 (3d Cir. Nov. 23, 2021).

On March 4, 2021, the United States moved to dismiss all claims against it in this action pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (ECF No. 27.) Ms. Phinisee responded to the United States' motion on November 23, 2021. (ECF No. 29.)

## II. STANDARD OF REVIEW

A court must dismiss a matter if it lacks subject matter jurisdiction over the complaint. Fed. R. Civ. P. 12(b)(1). In deciding a 12(b)(1) motion, a court must first determine whether the motion presents a "facial" or "factual" attack on subject matter jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack concerns a purported pleading deficiency, "whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A challenge to subject matter jurisdiction on the ground that a plaintiff failed to exhaust administrative remedies before filing a lawsuit is a factual attack, because it challenges the existence of jurisdiction as opposed to the sufficiency of the pleadings. *Medina v. City of Philadelphia*, Civ. A. No. 04-5698, 2005 WL 1124178, at *2 (E.D. Pa. May 9, 2005) (Schiller, J.), *aff'd*, 219 F. App'x 169 (3d Cir. 2007). In the event of a factual attack, the court does not presume the truthfulness of the allegations in the complaint, and the court may make factual findings on the issue of jurisdiction. *Id.*

A court must also dismiss the case if the complaint fails to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(6). When the court considers a 12(b)(6) motion, it accepts as true "all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The court considers the context, drawing upon judicial experience and common sense, and uses this information to determine whether the plaintiff has stated a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the plaintiff has not, the moving party is entitled to dismissal of claims against it. *Id.* at 679-80.

Because Ms. Phinisee brings this action *pro se*, the Court will construe her complaint liberally and apply the applicable law, irrespective of whether she has mentioned it by name. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

### III.     DISCUSSION

#### A.     Subject Matter Jurisdiction

Both Ms. Phinisee and the United States argue that the Court does not have subject matter jurisdiction over this action. Ms. Phinisee argues that the Court lacks subject matter jurisdiction because her claims fall within a Federal Torts Claims Act ("FTCA") statutory exception that preserves the United States' immunity against claims arising out of battery. The United States, in turn, argues that the Court lacks subject matter jurisdiction because Ms. Phinisee failed to exhaust her administrative remedies before bringing suit as required by the FTCA.

The Court agrees with the United States. Under the FTCA, a plaintiff may not bring suit until she has first exhausted her administrative remedies. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 112 (1993) (the FTCA requires "complete exhaustion of Executive remedies before invocation of the judicial process"). To exhaust her administrative remedies, a plaintiff must: (1) provide the appropriate agency with written notification of the incident and a claim for money damages in a sum certain within two years after the claim accrues; and (2) allow the agency six months to consider the claims presented. 28 U.S.C. § 2401(b); 28 C.F.R. § 14.2. She may then pursue remedies in court once the claim has "been finally denied by the agency" or if the agency fails "to make final disposition of a claim within six months after it is filed." 28 U.S.C. § 2675(a). A plaintiff's failure to abide by these requirements necessitates dismissal of her suit for lack of subject matter jurisdiction. *See Tucker v. United States Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1982) ("Noncompliance with section 2675 deprives a claimant of federal court jurisdiction over his or her claim.").

Here, Ms. Phinisee did not exhaust her administrative remedies. Neither the Third Amended Complaint nor any of Ms. Phinisse's other materials demonstrate that she filed an administrative claim with the Public Health Service as it relates to the claims in the Third Amended Complaint. Instead, she states in her response to the United States' motion to dismiss that her the "administrative claim [] filed for both [her] and her minor child in 2008," which allowed her to proceed to federal court in the 2010 Action, shows that the United States' "assertion that [she] has not exhausted all administrative remedies is untrue." (ECF No. 29 at 11.) Ms. Phinisee's counter, however, is self-defeating: if the administrative claim filed in connection with the 2010 Action were to be sufficient here, it would mean that the conduct underlying the instant action were the same as that underlying the 2010 Action, which was already settled and resolved. And if it the

administrative claim were not sufficient, then Ms. Phinisee would have been required to file another administrative claim related to the conduct underlying the instant action, which she did not. In other words, Ms. Phinisee cannot both allege that this action involves claims distinct from those brought in the 2010 Action and that her 2008 filing suffices to fulfill Section 2675's requirements here.

Additionally, even if her 2008 administrative claim were to suffice here, Ms. Phinisee is now well beyond the six-month statutory period within which she was required to file suit in federal court regarding the allegations in the Third Amended Complaint. And it is far too late to file another administrative claim, as it is well beyond the two-year statutory period within which she was required to file a claim with the Public Health Service in the first place. Amendment is also not permitted, as claims may only be amended "prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a)." 28 C.F.R. § 14.2(c).

Moreover, "[i]t is well settled that the United States enjoys sovereign immunity from suits and, accordingly, may be sued only if it has waived that immunity." *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 93-94 (3d Cir. 1995). Section 2680 of the FTCA has established certain "exceptions" to this general waiver of sovereign immunity. If a plaintiff's claim falls within one of these "exceptions," the United States retains its immunity from suit with respect to that claim and a court is without subject matter jurisdiction. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1085 (3d Cir. 1992). Without expressing an opinion on the sufficiency or substance of the claims asserted in the Third Amended Complaint, the Court notes that Ms. Phinisee is correct that Section 2680 of the FTCA preserves the Government's immunity for certain intentional torts committed by Government workers, including those sounding in battery. *See* 28 U.S.C. § 2680(h) (the provisions of the FTCA shall not apply to "[a]ny claim arising out of assault, battery . . .").

In any event, it is clear that the Court does not have subject matter jurisdiction over Ms. Phinisee's claims against the United States.

**B.     Failure to State a Claim**

All defendants argue that the Third Amended Complaint fails to state a claim upon which relief can be granted. The Court agrees.

*1. Court of Common Pleas' September 3, 2020 Orders*

On September 3, 2020, the Court of Common Pleas ordered that Counts I through VI of Ms. Phinisee's Amended Complaint be stricken and dismissed with prejudice as to Drexel and three of the CHOP Defendants: Mr. Matthews, Ms. Kamath, and Ms. Shah. (ECF No. 13, Ex. B; ECF No. 18, Ex. C.) Although Ms. Phinisee has since filed a Third Amended Complaint, it is substantively the same as the Amended Complaint. Therefore, the September 3 Order necessitates that all claims asserted against Mr. Matthews, Ms. Kamath, Ms. Shah, and Drexel (except for the vicarious liability claim against it) are dismissed here, as they have already been dismissed.

*2. Statute of Limitations*

The Third Amended Complaint should also be dismissed because Ms. Phinisee did not bring this action within the applicable statute of limitations.

Pennsylvania has a two-year statute of limitations for the following:

(1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
. . .
(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter. . . .

42 PA. STAT. AND CONS. STAT. ANN. § 5524 (West).

The statute of limitations begins to run when the plaintiff discovers, or reasonably should discover, that: (1) she has been injured, and (2) her injury has been caused by another party's conduct. *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). A plaintiff need not know the precise medical cause of her injury in order for the statute of limitations to start running; "she need only to have known that she was *injured*." *Groover v. Riddle Mem'l Hosp.*, 516 A.2d 53, 57 (Pa. Super. Ct. 1986), *app. denied*, 528 A.2d 957 (Pa. 1987) (emphasis in original). A plaintiff moreover has a duty to exercise all reasonable diligence to be properly informed of the facts and circumstances upon which her right of recovery is based and to bring suit within the prescribed period. *Hayward v. Med. Ctr. of Beaver Cty.*, 608 A.2d 1040, 1042 (Pa. 1992). "Lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).

Statute of limitations defenses are traditionally raised in the answer, but the so-called "Third Circuit Rule" permits defendants to raise limitations defenses in 12(b)(6) motions instead of their answer "[i]f the bar is [] apparent on the face of the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). "Although the general rule is that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss, we have acknowledged that the court may also consider matters of which judicial notice may be taken." *O'Boyle v. Braverman*, 337 F. App'x 162, 164 n.2 (3d Cir. 2009) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Courts may take judicial notice of matters of public record, including prior judicial opinions and other court dockets, not to demonstrate the truth of the facts asserted in the opinions or filings, but to establish that the opinions and filings exist. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004), *abrogated in part on other grounds by Twombly v. Bell Atl. Corp.*, 550 U.S. 544 (2007); *Plumbers' Loc.*

13

*Union No. 690 Health Plan v. Apotex Corp.*, Civ. A. No. 16-665, 2017 WL 4235773, at \*6 (E.D. Pa. Sept. 25, 2017) (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

The Court hereby takes judicial notice of the 2010 Action's docket and related filings. (*A.P*, No. 10-1253-RAL (E.D. Pa.).) Additionally, as specifically requested by the CHOP Defendants, the Court takes judicial notice of the Third Circuit's decisions—found at 556 Fed. App'x 132 (3d Cir. 2014) and 736 Fed. App'x 309 (3d Cir. 2018), as well as that found at 2021 WL 5492805 (3d Cir. Nov. 23, 2021) issued after the filing of the CHOP Defendants' motion—addressing and resolving matters in connection with the 2010 Action.

Here, a two-year statute of limitations applies to Ms. Phinisee's claims for fraudulent concealment (Count I), lack of consent (Counts II and IV), medical assault and battery (Count III), negligent infliction of emotional distress (Count V), and intentional infliction of emotional distress (Count VI). *See Yelinek v. Johnson & Johnson*, Civ. A. No. 20-799, 2021 WL 4864294, at \*6 (W.D. Pa. Oct. 19, 2021) (fraud); *Okane v. Tropicana Entm't, Inc.*, Civ. A. No. 12-6707, 2013 WL 56088, at \*2 (E.D. Pa. Jan. 3, 2013) (negligent infliction of emotional distress and intentional infliction of emotional distress); *Levenson v. Souser*, 557 A.2d 1081, 1084, 1086 (Pa. Super. Ct. 1989) (lack of consent, assault, and battery). Though stylized as an invasion of privacy claim, the allegations contained in Count VII exclusively discuss "breach[es] of physician-patient confidentiality."[7] (Third Am. Compl. ¶¶ 102-03.) As such, the Court will construe Count VII as a

---

[7] Pennsylvania law recognizes four types of invasion of privacy claims: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing a person in a false light. *See Santillo v. Reedel*, 634 A.2d 264, 266 (Pa. Super. Ct. 1993). Ms. Phinisee's invasion of privacy claim as alleged in the Third Amended Complaint clearly does not fall within any of these categories. Even so, these invasion of privacy claims are subject to a one-year limitations period. *See* 42 PA. STAT. AND CONS. STAT. ANN. § 5524 (West). The Court's reasoning therefore applies to with equal force to Count VII in any event.

14

breach-of-confidentiality claim, which is also subject to a two-year limitations period. *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 381 (Pa. 2009).

It is apparent based on the face of the Third Amended Complaint, as well as the filings and judicial opinions from other cases initiated by Ms. Phinisee of which the Court has taken judicial notice, that Ms. Phinisee failed to bring this action within the two-year limitations period. The cause of action in this matter accrued when Ms. Phinisee and A.P. received medical treatment in May 2008, more than eleven years before Ms. Phinisee initiated suit here. And Ms. Phinisee's multiple other suits involving the very treatment that forms the basis of this action—including the 2010 Action, in which Ms. Phinisee brought claims both on behalf of A.P. *and* in her individual capacity and on behalf of A.P.—demonstrate that she clearly knew of the possible claims she could have made long ago. (*See* Complaint, *A.P.*, No. 10-1253-RAL (E.D. Pa. Mar. 22, 2010), ECF No. 1 (asserting several individual claims as to Ms. Phinisee).) Indeed, Ms. Phinisee admits in the Third Amended Complaint that she discussed possible claims, including individual claims, with counsel as early as 2009. (*See, e.g.*, Third Am. Compl. ¶¶ 44, 52.) It is thus unequivocal that Ms. Phinisee could have, but failed to, bring this action well within the two-year limitations period. *See Rose v. Pawlowski*, Civ. A. No. 19-3853, 2019 WL 6310247, at *5 (E.D. Pa. Nov. 22, 2019) ("Here, the allegations of the Complaint . . . and [plaintiff's] own filings in prior litigation reflect that he was aware, or should have been aware with the exercise of due diligence, of the events giving rise to his claims more than two years before he filed his Complaint on August 23, 2019. . . . [Plaintiff] raised essentially identical allegations . . . in a September 30, 2010 complaint he filed against [the same defendant and others]."); *Donovan v. Idant Labs.*, 625 F. Supp. 2d 256, 266 (E.D. Pa. 2009) ("Here, [the mother] gave birth on January 4, 1996 after an implantation in 1995 and alleged that

she noticed abnormalities and developmental delays in the months following [her daughter's] birth. Regardless of what date is used to establish the date of injury, the date of [the mother] filing of suit, July 16, 2008, was substantially after the statutes of limitations had run."), *aff'd sub nom. D.D. v. Idant Labs.*, 374 F. App'x 319 (3d Cir. 2010).

Ms. Phinisee's argument that the doctrine of fraudulent concealment tolled the statute of limitations is unavailing. In Pennsylvania, the fraudulent concealment doctrine tolls the statute of limitations where "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991) (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)).[8] To invoke the fraudulent concealment doctrine, a plaintiff must show that there took place an affirmative and independent act of concealment that would divert or mislead her from discovering her injury, which may include "a physician's assurances which lull a patient into a false sense of security." *Id.* (quoting *DeMartino v. Albert Einstein Med. Ctr.*, 460 A.2d 295, 301 (Pa. Super. Ct. 1983)). However, "reliance upon the word of one physician when the patient's own common sense should lead one to a different conclusion is unreasonable." *DeMartino*, 460 A.2d at 301. A proper invocation of the fraudulent concealment doctrine tolls the statute of limitations until the plaintiff

---

[8] The Third Amended Complaint also contains allegations that Ms. Phinisee's former counsel fraudulently concealed information from her. Ms. Phinisee also appended several documents to her 12(b)(1) motion, including various filings and transcripts related to the 2010 Action, as well as excerpts of Magistrate Judge Hart's 2012 opinion and order enforcing the 2012 Settlement, purporting to show that her counsel fraudulently concealed information from Ms. Phinisee (though it is not clear how this information is connected to the Court's subject matter jurisdiction, and the Court is not aware of any case in which fraudulent concealment barred a court from exercising, or not exercising, its subject matter jurisdiction). (*See* ECF No. 5 Exs. A-G.) However, Ms. Phinisee's former attorneys are not named as defendants in the instant action, and the fraudulent concealment doctrine requires fraud or concealment on the part of a *defendant* to an action, so any arguments regarding tolling the statute of limitations based on their purported fraudulent concealment must fail. The Court will address the fraudulent concealment doctrine only as it pertains to the named defendants.

16

knew or, using reasonable diligence, should have known of her claim. *Vernau v. Vic's Mkt., Inc.*, 896 F.2d 43, 46 (3d Cir. 1990).

The doctrine of fraudulent concealment does not apply here. In the preamble to Count I, and throughout the Third Amended Complaint, Ms. Phinisee appears to claim that the medications she was provided following A.P.'s birth, which A.P. ultimately ingested via Ms. Phinisee's breast milk, were fraudulently concealed from Ms. Phinisee and were not included on certain medical forms. But Ms. Phinisee's post-birth medications were the basis of the 2010 Action. That the Third Amended Complaint purports to cover a longer series of events than the complaint in the 2010 Action—beginning the timeline just before A.P.'s birth, instead of during Ms. Phinisee's visit to Ms. Graham-Parker in the following days (though the Third Amended Complaint covers the Graham-Parker visit as well)—and different medications—seemingly Oxycodone, Picotin, an epidural, and anesthesia, instead of just Macrobid (though the Third Amended Complaint covers Macrobid as well)—does not change this. Nowhere in the Third Amended Complaint does Ms. Phinisee provide any reason to believe that she only learned of the claims underlying the instant action within the two years before bringing this suit. Although she alleges that she first learned that she had taken Oxycodone in January 2020, she provides no information as to how she discovered this or why she was impeded from discovering this over the prior decade. (Third Am. Compl. ¶ 12.) And even if Ms. Phinisee were "lull[ed] into a false sense of security" between May 2008 and January 2020, her "common sense" directed her to file suit regarding her post-birth medication in 2010, which could and should have encompassed (and *did* encompass many of) the claims here. Ms. Phinisee had even mentioned the CHOP Defendants—who allegedly treated Ms. Phinisee in connection with her ingestion of Oxycodone and Macrobid—in filings in the 2010 Action, as early as 2018, making this allegation that much more dubious. (*See, e.g.*, Motion for

Reconsideration, *A.P*, No. 10-1253-RAL (E.D. Pa. Sept. 25, 2018), ECF No. 133; Motion for Leave to Amend Doc. 1 Complaint, *A.P.*, No. 10-1253-RAL (E.D. Pa. Nov. 7, 2018), ECF No. 138.)

The Court therefore dismisses Counts I through VII of the Third Amended Complaint as time barred by the applicable statute of limitations. Consideration of Defendants' other theories of dismissal thus need not be undertaken. *See McPherson v. United States,* 392 F. App'x 938, 945 (3d Cir. 2010) (affirming the district court's dismissal of the complaint as time-barred and, as such, declining to decide whether the complaint would be dismissed according to alterative theories); *Moreno v. Eye Ctr.*, Civ. A. No. 3:14-CV-0081, 2014 WL 3563498, at *3 (M.D. Pa. July 17, 2014) ("[B]ecause this Court finds that Plaintiff's complaint is barred by the applicable statute of limitations, consideration of his claims for relief need not be undertaken."); *Moreno v. Vaught*, Civ. A. No. 00-1541, 2000 WL 1730898, at *1 (M.D. Pa. Nov. 21, 2000) ("We need not address the other issues because we agree with the respondents that the petition is time-barred.").

### 3. Vicarious Liability

Counts VIII through XII of the Third Amended Complaint assert that the Health Annex, Family Health Services, Drexel, CHOP, and HUP, respectively, are all vicariously liable for the actions of the individual defendants.

"A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor." *Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989). As such, "termination of the claim against the agent extinguishes the derivative claim against the principal." *Id.* As discussed *supra*, all claims against the individual defendants have been dismissed. Counts VIII through XII of the Third Amended Complaint are therefore dismissed as well.

### C. Dismissal with Prejudice

Dismissal of a *pro se* complaint without leave to amend is justified if amendment would be futile. *Shane v. Fauver,* 213 F.3d 113, 117 (3d Cir. 2000); *see also Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) (ordering the district court to offer plaintiff leave to amend "unless a curative amendment would be inequitable, futile, or untimely"). Here, it would be futile for the Court to dismiss without prejudice since the statutory period has lapsed. *See Slewion v. Weinstein*, Civ. A. No. 12-3266, 2013 WL 979432, at *1 (3d Cir. Mar. 14, 2013). Accordingly, the Court dismisses the Third Amended Complaint with prejudice.

### D. Consolidation

Ms. Phinisee also moves to consolidate this case with the 2010 Action pursuant to Fed. R. Civ. P. 42. However, given that all claims against all defendants have been dismissed, and this Court no longer has subject matter jurisdiction since the United States has been dismissed, it follows that this motion is denied as well.[9]

### IV. CONCLUSION

For the reasons stated, Ms. Phinisee's motion to dismiss the United States is granted. Drexel, the CHOP Defendants, the HUP Defendants, and the United States' motions to dismiss

---

[9] The Court notes that Ms. Phinisee's motion is less a motion to consolidate than a motion for yet another bite at the apple. She seeks "[c]onsolidation [that] will result in one trial which will bind all plaintiffs and defendants" in both this and the 2010 Action. (ECF No. 21 at 19.) As set forth in her motion, this proposed "trial" would address issues involving the 2012 Settlement and the alleged improper conduct of her former counsel. For example, her motion asserts that consolidation is appropriate because: the Court in the 2010 Action "abused its discretion by granting a Minor's compromise filed by an terminated attorney with conflicting interest in opposition to his former client who also testified as a witness in support of the U.S. defendant"; "[a]s a result of this abuse of discretion, settlement funds were distributed and released to a law firm Phinisee had legally terminated from handling any of her legal affairs"; and it would allow Ms. Phinissee "the opportunity of Confrontation and Cross-Examination of her former counsel." (ECF No. 21 at 15-19.) This is not a legitimate request for consolidation; instead, Ms. Phinisee is yet again trying to relitigate matters that have already been addressed and resolved.

the Third Amended Complaint are also granted. The Third Amended Complaint is therefore dismissed with prejudice as time barred.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Court remands this matter to the Philadelphia Court of Common Pleas for any further proceedings due to lack of subject matter jurisdiction. An Order consistent with this Memorandum will be docketed separately.